UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SABRINA S.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00320-DLP-JPH |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Sabrina S. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act. *See* 42 U.S.C. §§ 405(g), 1381 *et seq.* For the reasons set forth below,

the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this matter for further proceedings.

### I.   PROCEDURAL HISTORY

On August 1, 2019, Sabrina filed an application for Title XVI SSI benefits,

alleging disability beginning March 24, 1999. (Dkt. 8-5 at 2, R. 211). Sabrina's

application alleged disability resulting from epilepsy, attention-deficit/hyperactivity

disorder (ADHD), post-traumatic stress disorder (PTSD), obsessive-compulsive

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

disorder (OCD), anxiety, and borderline personality disorder. (Dkt. 8-6 at 6, R. 229). The Social Security Administration ("SSA") denied Sabrina's claim initially on September 5, 2019, (Dkt. 8-4 at 2-5, R. 141-44), and on reconsideration on January 17, 2020. (Dkt. 8-4 at 11-17, R. at 150-56). Sabrina filed a written request for a hearing, (Dkt. 8-4 at 18, R. 157), which was granted.

On August 27, 2020, a hearing was held before Administrative Law Judge ("ALJ") Jason Yoder, where Sabrina, her counsel, and vocational expert Cathy Giedeman all appeared telephonically. (Dkt. 8-2 at 80-119, R. 79-118). On September 10, 2020, ALJ Yoder issued an unfavorable decision finding that Sabrina was not disabled. (Dkt. 8-2 at 21-33, R. 20-32). On April 27, 2021, the Appeals Council denied Sabrina's request for review, making the ALJ's decision final. (Dkt. 8-2 at 2-5, R. 1-4). Sabrina now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she

2

cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than steps three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to supplemental security income benefits. The parallel section pertaining to the other type of benefits—in this case disability insurance benefits—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Sabrina is disabled, but rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific

evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Sabrina was twenty years old on the date her application was filed. (Dkt. 8-5 at 2, R. at 211). She has a high school education. (Dkt. 8-6 at 7, R. at 230). She has no past relevant work. (Id. at 6, R. 229; Dkt. 8-2 at 31, R. 30).

#### B. ALJ Decision

In determining whether Sabrina qualifies for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that Sabrina was not disabled. (Dkt. 8-2 at 21-33, R. 20-32). At Step One, the ALJ found that Sabrina had not engaged in substantial gainful activity since her application date of August 1, 2019.[3] (Id. at 23, R. 22).

At Step Two, the ALJ found that Sabrina had the following severe impairments: epilepsy/seizure disorder, dysthymic disorder, bipolar disorder/mood disorder, history of posttraumatic stress disorder (PTSD), oppositional defiant disorder (OCD), and a history of sexual abuse. (Id.).

---

[3] SSI is not compensable before the application date. 20 C.F.R. § 416.335.

At Step Three, the ALJ found that Sabrina's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, considering Listings 11.02A and 11.02B (epilepsy) for her seizure disorder, and Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) for her mental impairments. (Id. at 23-24, R. 22-23). When considering the "paragraph B" criteria, the ALJ found that Sabrina had mild limitations in adapting or managing herself and moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Id. at 24-25, R. 23-24). The ALJ also found the "paragraph C" criteria not satisfied. (Id. at 25, R. 24).

After Step Three but before Step Four, the ALJ found that Sabrina had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 416.967(c) in that she can lift/carry 50 pounds occasionally and 25 pounds frequently; sit for at least 6 out of 8 hours; stand/walk for about 6 out of 8 hours; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; frequently balance, stoop, kneel, crouch, and crawl; avoid all exposure to dangerous workplace hazards, such as exposed moving machinery and unprotected heights; can understand and remember simple instructions and carry out simple, routine, and rote tasks that require little independent judgment or decision-making; must work in a stable work setting where there is little daily change in terms of tools used, the processes employed, or the setting itself, and change, when necessary, is

introduced gradually; and can have occasional interaction with others, including the public, coworkers, and supervisors. (Id. at 25-31, R. 24-30).

At Step Four, the ALJ concluded that Sabrina had no past relevant work. (Id. at 31, R. 30). At Step Five, relying on the testimony of the vocational expert, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Sabrina could perform, such as hand packager, laundry worker, and hospital cleaner. (Id. at 32, R. 31). The ALJ thus concluded that Sabrina was not disabled. (Id. at 33, R. 32).

## IV.   ANALYSIS

Sabrina challenges the ALJ's decision on two bases. First, Sabrina contends that the ALJ erred at Step Three when evaluating whether Plaintiff's impairments met or medically equaled Listing 11.02. (Dkt. 10 at 1, 3-10). Second, Sabrina argues that the ALJ's residual functional capacity assessment is flawed because it fails to sufficiently account for her moderate limitations in concentration, persistence, and pace. (Id. at 1, 10-18). The Court will address each of Sabrina's arguments in turn.

### A. Listing 11.02

Sabrina first argues that the ALJ erred when he failed to adequately analyze whether Sabrina's seizure disorder met or medically equaled the requirements of Listing 11.02. (Dkt. 10 at 4-9). In response, the Commissioner maintains that the ALJ's findings were supported by substantial evidence and his analysis was proper. (Dkt. 11 at 7-10).

8

Under Step Three of the sequential evaluation process, if a claimant has an impairment that meets or medically equals the criteria of an impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumptively disabled and qualifies for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The Listings specify the criteria for impairments that are considered presumptively disabling. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1525(a)). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. *Id.* (citing 20 C.F.R. § 404.1526).

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment with medical findings. *Minnick*, 775 F.3d at 935; *Sims*, 309 F.3d at 428; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

When assessing a neurological disorder under Listing 11.00, the SSA will assess both medical and non-medical evidence. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00B. To be considered presumptively disabled under Listing 11.02, a claimant's epilepsy[4] must be documented by a detailed description of a typical seizure, and characterized by:

---

[4] Epilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. There are various types of generalized and "focal" or partial seizures.

A.  Generalized tonic-clonic seizures[5] occurring at least once a month for at least 3 consecutive months[6] despite adherence to prescribed treatment;[7] or

B.  Dyscognitive seizures[8] occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02A, 11.02B.[9]  The claimant must also provide "at least one detailed description of [her] seizures from someone, preferably a medical professional, who has observed at least one of [her] typical seizures." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H2. If the claimant experiences more than one type of seizure, a description is required for each type. *Id.*

---

In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures). 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H1.

[5] A generalized tonic-clonic seizure is characterized by"loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H1a.

[6] The period specified in 11.02A, B, C, or D cannot begin earlier than one month after the claimant begins prescribed treatment. In addition, when evaluating the frequency of the seizures, the SSA will consider the claimant's adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H4.When making this determination, the SSA will:
    a. Count multiple seizures occurring in a 24-hour period as one seizure.
    b. Count status epilepticus (a continuous series of seizures without return to consciousness between seizures) as one seizure.
    c. Count a dyscognitive seizure that progresses into a generalized tonic-clonic seizure as one generalized tonic-clonic seizure.
    d. Will not count seizures that occur during a period when the claimant is not adhering to prescribed treatment without good reason.

[7] "Despite adherence to prescribed treatment" means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00C

[8] A dyscognitive seizure is characterized by "alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H1b.

[9] Plaintiff contends that only Listings 11.02A and 11.02B are relevant to this case. (Dkt. 10 at 4).

In finding that Sabrina's seizure disorder did not meet or medically equal

Listing 11.02, the ALJ reasoned:

> Setting aside the claimant's subjective reports, there is no evidence
> showing that the claimant suffers either grand mal seizures or more
> focal episodes at the frequency required by either listing despite
> prescribed treatment. Moreover, under each listing, in accordance with
> section 11.00H2, a claimant must provide "at least one detailed
> description of [her episodes] from someone, preferably a medical
> professional, who has observed at least one [typical seizure]." Absent
> from the record are any observations from an acceptable medical source
> giving details of a seizure episode and all associated phenomena.

(Dkt. 8-2 at 24, R. 23).

Sabrina first argues that the ALJ erred by ignoring evidence that helped

demonstrate that she met Listing 11.02A and 11.02B. (Dkt. 10 at 4). Specifically,

the Plaintiff contends that the ALJ ignored two function reports provided by her

fiancée, Travis Pummel, which described Sabrina's various seizures and

documented their frequency. (Dkt. 10 at 5) (citing Dkt. 8-6 at 27-37, 50-51, R. 250-

60, 273-74). In Mr. Pummel's August 9, 2019 report, he indicated that Sabrina

experienced nightly and weekly dyscognitive seizures that caused her to stare off in

space and resulted in her body twitching really hard. (Dkt. 10 at 5) (citing Dkt. 8-6

at 36, R. 259). Mr. Pummel also stated that Sabrina experienced grand mal

(generalized tonic-clonic)[10] seizures every six months. (Id.). A few months later, on

November 6, 2019, Mr. Pummel completed a second function report for Sabrina.

(Dkt. 8-6 at 50-51, R. 273-74). In this report, Mr. Pummel modified his statements

---

[10] Tonic-clonic seizures, formerly known as grand mal seizures, "involve both tonic (stiffening) and
clonic (twitching or jerking) phases of muscle activity. *Tonic-Clonic (Grand Mal) Seizures*, JOHNS
HOPKINS MED., https://www.hopkinsmedicine.org/health/conditions-and-diseases/epilepsy/tonic-
clonic-grand-mal-seizures (last visited Sept. 29, 2022).

regarding the frequency of Sabrina's grand mal seizures from "every 6 months," (Dkt. 8-6 at 36, R. 259), to a "couple of times" per year. (Dkt. 8-6 at 50, R. 273). He also provided more details regarding the characteristics of Sabrina's various seizures. (Id.). When reviewing Mr. Pummel's reports, the ALJ noted:

> Mr. Pummel reported on August 9, 2019, that he has witnessed several seizure episodes involving the claimant. He indicated that, during some seizures, the claimant would stare off into space and he was not able to get her attention. Other times, the claimant would twitch "really hard" and shake. She would become stiff, convulse, and cry. On occasion, the claimant became incontinent. At times, it would take the claimant as long as six hours to return to normal. Mr. Pummel submitted a second seizure report on November 6, 2019, in which he noted that the claimant had no forewarning of an episode. He also reported that the claimant suffered falls during her seizures and that she sustained injuries to her mouth and jaw. According to Mr. Pummel, following her seizures, the claimant "has [the] mind of a child" and slurs her speech.

(Dkt. 8-2 at 27, R. 26) (internal citations omitted). Here, Sabrina maintains that the ALJ's analysis of Mr. Pummel's opinions is flawed because the ALJ failed to provide a reason for rejecting or dismissing Mr. Pummel's statements regarding the frequency with which Sabrina experienced her seizures. (Dkt. 10 at 6). Because of the ALJ's alleged failure to properly analzye Mr. Pummel's observations, Sabrina seems to suggest that the ALJ's Step Three analysis is flawed. (Dkt. 10 at 6). This argument fails.

To qualify under Listing 11.02A, a grand mal seizure is characterized in part by loss of consciousness, occuring at least once a month for at least three consecutive months despite adherence to prescribed treatment. Neither of Mr. Pummel's function statements suggest that Sabrina experienced "grand mal" seizures at the frequency required under the Listing. (Dkt. 8-6 at 36-37, 50, R. 259-

60, 273). Thus, any error to evaluate Mr. Pummel's statements regarding the grand mal seizures was harmless. *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) (remand is not required if claimant does not satisfy all of the listing criteria).

To meet Listing 11.02B, a claimant must have "dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment." *Malkasian v. Saul*, No. 18-CV-1371, 2019 WL 6702136 at *2 (E.D. Wis. Dec. 9, 2019); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02B. In his August and November 2019 reports, Mr. Pummel described Sabrina experiencing dyscognitive seizures every night. (Dkt. 8-6 at 36, 50, R. 259, 273). These statements were not supported by the objective medical evidence, the treatment records, or Sabrina's statements.

In addition to reviewing Mr. Pummel's reports, the ALJ also reviewed Sabrina's seizure history in the RFC analysis. On March 22, 2019, Dr. Faris Fadheed examined Sabrina for her seizure disorder at Midwest Neurological. (Dkt. 8-2 at 27, R. 26). Sabrina was diagnosed with "localization-related (focal) (partial) symptomatic epilepsy and epileptic syndrome with complex partial seizures, not intractable, without status epilepticus." (Id. at 27, R. 26). Sabrina was prescribed Zonisamide/Zonegran by Dr. Fadheed. (Id.).

A few months later, during outpatient psychotherapy treatment at Samaritan Center, on August 14, 2019, Sabrina told her treatment provider that she was experiencing a new type of seizure, and that it made her "twitchy" but she remained awake. (Dkt. 8-2 at 27, R. 26). Returning to Dr. Fadheed on October 2,

13

2019, Sabrina stated that she had experienced two seizures since her last visit with him, including one in April, and the most recent a week prior to the appointment (Id.). Sabrina indicated, however, that she was doing well on her medication. Dr. Fadheed continued her on Zonegran. (Id). The ALJ also noted that the October 2019 electroencephalogram ("EEG") showed "no epileptiform activity." (Dkt. 8-2 at 31, R. 30).

On November 22, 2019, Sabrina reported to the emergency department of Good Samaritan Hospital for seizure activity. (Dkt. 8-2 at 28, R. 27). She indicated that her last seizure episode was on April 18, 2019, and that she had failed to take her medication the previous evening. (Id.). The medical staff noted that Sabrina did not look post-ictal and opined that her seizure activity was likely caused by her failure to take her medication. (Dkt. 8-2 at 28, R. 27).

A few days later, on November 28, 2019, Sabrina returned to the hospital after her arms and legs began twitching intermittently. (Id.). Sabrina reported that she experienced four seizure episodes a year. The medical professionals found no evidence of seizure-like activity, and noted that Sabrina's twitching behaviors ceased when hospital personnel left the claimant's room. (Id.). Sabrina was treated with Ativan. (Id.). On December 27, 2019, Sabrina was assessed with a breakthrough seizure. (Id.). On July 17, 2020, Sabrina underwent an MRI of the brain at Methodist Hospital. The MRI revealed "no anatomic evidence for seizure focus." (Id.).

The ALJ also considered Sabrina's hearing testimony concerning her seizures, the frequency of her seizures, and her compliance with taking her seizure medication, but noted that Sabrina's testimony was inconsistent with statements made to Dr. Fadheed and other medical personnel as well as objective evidence in the record. (Id. at 26, 30-31, R. 25, 29-30). *See Masters v. Astrue*, 818 F. Supp. 2d 1054, 1065 (N.D. Ill. 2011) ("[A]n ALJ may reasonably disbelieve a claimant's testimony when, for example, it is contradicted by medical records or other medical evidence, by conduct inconsistent with the claim, by prior inconsistent statements, or other conduct or statements that tend to render the testimony doubtful."); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The Plaintiff does not contest the ALJ's subjective symptom analysis.

Here, the ALJ also noted that the claimant was not always compliant in taking her seizure medication. (Dkt. 8-2 at 31, R. 30). Sabrina fails to contest this finding. By not showing that she complied with treatment, Sabrina is unable to demonstrate that she meets either Listing 11.02A or 11.02B because both require adherence to prescribed treatment.

While Sabrina maintains that her February 21, 2021 electroencephalogram ("EEG"), submitted after both the August 27, 2020 disability hearing and the ALJ's September 10, 2020 decision, provides a basis for changing the ALJ's decision, (Dkt. 10 at 7), the Plaintiff fails to explain *how* this EEG evidence helps to establish the frequency and intensity of Sabrina's seizures necessary to demonstrate that she

ssatisfies either subsection (A) or (B) of Listing 11.02.[11] Such undeveloped

arguments are waived. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019)

(quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th

Cir. 2016)).

Neither Sabrina's statements to providers, medical evidence, or seizure

history support Mr. Pummel's statements or the claimant's contention that she

experienced dyscognitive seizures nightly for at least three consecutive months

while adhering to treatment as required under Listing 11.02B. (Dkt. 8-2 at 27-28, R.

26-27). Moreover, the Plaintiff  fails to direct the Court to any medical evidence or

documentation that the ALJ ignored or missed that supports Mr. Pummel's

statements regarding the frequency of Sabrina's seizures.

Sabrina further contends that the ALJ erred by failing to consider whether

her impairments medically equaled" Listing 11.02. (Dkt. 10 at 8-10). The

Commissioner does not directly address Plaintiff's argument regarding medical

equivalence; instead, the Commissioner contends that the ALJ's analysis was more

than perfunctory, and the Court should not disturb the ALJ's finding. (Dkt. 11 at 9-

10).

Although the ALJ found Sabrina's stated impairments did not meet or

medically equal Listing 11.02, (Dkt. 8-2 at 23-24, R. 22-23), he failed to offer any

specific analysis of whether Plaintiff's impairments medically equaled Listing 11.02.

---

[11] In evaluating epilepsy under Listing 11.02, the SSA "do[es] not require EEG test results [and
therefore] will not purchase them. However, if EEG test results are available in [a claimant's]
medical records, [the SSA] will evaluate them in the context of the other evidence in [the claimant's]
case record." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H5.

*See Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *3 (N.D. Ill Nov. 26, 2019) (citing *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) ("[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing.")). Sabrina maintains that the ALJ's failure to consider medical equivalence is particularly troubling given Mr. Pummel's testimony which the ALJ neither rejected or dismissed. (Dkt. 10 at 9).

"Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Specifically, to establish medical eqivalence at Step Three, the record must contain:

> 1. A prior administrative medical finding from [a state agency medical consultant or psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or 2. [medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or 3. A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.
>
> . . .
>
> "[I]f an adjudicator at the hearings or [Appeals Council] level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.

SSR 17-2p, 2017 WL 3928306, at *3-4.

Relying on Mr. Pummel's testimony to support her medical equivalence argument, Sabrina maintains she has provided sufficient evidence to demonstrate she medically equals Listing 11.02. (Dkt. 10 at 9). The Court disagrees. First, the state agency reviewing physicians concluded that Sabrina had no impairments that met or medically equaled a listing. (Dkt. 8-3 at 6, 9, 19, 22, R. 123, 126, 136, 139). Further, the Disability & Transmittal forms completed by these physicians specifically note that they considered Listing 11.02 when making this assessment. (Dkt. 8-3 at 11, 23, R. 128, 140). Beyond Mr. Pummel's statements, which are not a valid basis for demonstrating that Sabrina medically equals Listing 11.02, the Plaintiff has failed to point to any record evidence to support her medical equivalence argument. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) ("A finding of medical equivalence requires an expert's opinion on the issue."). Thus, the ALJ's failure to weigh Mr. Pummel's statements on the issue of medical equivalence was harmless. Further, the ALJ's analysis of Listing 11.02 was more than perfunctory.

There is sufficient evidence supporting the ALJ's determination that Sabrina's epilspey lacked all the requirements of a presumptively disabling impairment under Listing 11.02. When read as a whole, the ALJ's opinion articulates his reasons for why he found Sabrina's impairment did not meet or medically equal the requirements of Listing 11.02A or 11.02B. Accordingly, remand is not warranted on this issue.

### B.  RFC Analysis

Sabrina also argues that the ALJ's residual functional capacity is not supported by substantial evidence because it fails to contain sufficient limitations to address her moderate impairments in concentration, persistence, and pace. (Dkt. 10 at 10-13). Sabrina further asserts that the assessed RFC is inconsistent with the jobs the ALJ found suitable at Step Five. (Id. at 13-18).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 416.945(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

The ALJ assessed an RFC of medium work with the following mental limitations:

> She can understand and remember simple instructions and carry out simple, routine, and rote tasks that require little independent judgment or decision-making. She must work in a stable work setting where there is little daily change in terms of tools used, the processes employed, or the setting itself, and change, when necessary, is introduced gradually. She can have occasional interaction with others, including the public, coworkers, and supervisors.

(Dkt. 8-2 at 25-26, R. 24-25). Primarily, Sabrina argues that the ALJ failed to include RFC limitations that would accommodate her concentration, persistence, and pace issues and that the limitations supposedly assigned to address these impairments are insufficient or not supported by substantial evidence. (Dkt. 10 at 10-12).

In the Seventh Circuit, "both the hypothetical to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including any mental limitations." *Moran v. Saul*, No. 3:19-CV-296-TLS-JPK, 2020 WL 4550438, at *6 (N.D. Ind. July 22, 2020), report and recommendation adopted, No. 3:19-CV-296-TLS-JPK, 2020 WL 4547147 (N.D. Ind. Aug. 6, 2020) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (internal quotations omitted)). In assessing the "paragraph B" criteria at Step Three, the ALJ found that Sabrina had moderate limitations in concentrating, persisting, or maintaining pace. (Dkt. 8-2 at 25, R. 24). When determining her mental functional limitations in the RFC, the ALJ summarized Sabrina's psychological treatment history. (Dkt. 8-2 at 29, R. 28). At fourteen, Sabrina's oppositional defiant problems,

ADHD, and PTSD were in the clinical and borderline clinical ranges upon testing. (Dkt. 8-2 at 29, R. 28). During this same time, Plaintiff's Global Assessment of Functioning ("GAF") score[12] reflected "serious symptoms or a major impairment in school functioning," The ALJ cautioned, however, that "[a] GAF score issued any one point in time cannot be treated as an evaluation of an individual's mental functional limitations over the course of the longitudinal record." (Id.).

During Sabrina's March 22, 2019 mental examination, Dr. Fadheed noted the Plaintiff was "distractible." (Dkt. 8-2 at 30, R. 29). Yet, at her her next therapy session on August 14, 2019, Sabrina's thought processes were found to be logical, coherent, and sequential by clinician Bobbie Davis, MSW. (Id. at 30, R. 29). After reviewing the record, the ALJ found moderate limitations in concentration, persistence, and pace. (Dkt. 8-2 at 25, R. 24). Having made this finding, the ALJ was obliged to accommodate Sabrina's mental limitations in the RFC or explain why it was unnecessary to do so. *Moran v. Saul*, No. 3:19-CV-296-TLS-JPK, 2020 WL 4550438, at *6 (citing *Heath v. Saul*, No. 1:19-cv-335, 2020 WL 3287221, at *2 (N.D. Ind. June 18, 2020); *Jennifer B. v. Saul*, No. 1:19-cv-347, 2020 WL 2520996, at *4 (N.D. Ind. May 18, 2020) (same).

In assessing the mental RFC, the ALJ noted:

Because the DDS consultants found no severe mental impairments, they provided no opinions on any mental functional limitations the claimant might have. The undersigned finds, based upon a review of the record

---

[12] The GAF scale is used to rate how serious a mental illness may be. It measures how much a person's symptoms affect their day-to-day life. Matt Smith, *What is the Global Assessment of Functioning (GAF) Scale?*, WEBMD (Feb. 6, 2021), https://www.webmd.com/mental-health/gaf-scale-facts#:~:text=The%20Global%20Assessment%20of%20Functioning%2C%20or%20GAF%2C%20scale%20is%20used,person%20can%20do%20everyday%20activities.

> as a whole, that the claimant can understand and remember simple
> instructions and carry out simple, routine, and rote tasks that require
> little independent judgment or decision-making. She must work in a
> stable work setting where there is little daily change in terms of tools
> used, the processes employed, or the setting itself, and change, when
> necessary, is introduced gradually. The claimant can have occasional
> interaction with others, including the public, coworkers, and
> supervisors.

(Dkt. 8-2 at 30, R. 29).

Although the determination of a claimant's RFC is a matter for the ALJ alone, he is still required to build a logical bridge between the evidence of mental impairments and the hypothetical and the mental RFC. *Heath*, 2020 WL 3287221, at *2. Here, the ALJ failed to offer any analysis connecting his moderate concentration, persistence, and pace limitations found at Step Three with the assessed mental RFC. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Phillips v. Berryhill*, No. 17 C 4509, 2018 WL 4404665, at *3 (N.D. Ill. Sept. 17, 2018) (noting that an ALJ's analysis is insufficient if she fails to link her RFC limitations to evidence in the record providing the necessary logical bridge from the evidence to the RFC's limitations).

The ALJ rejected the opinions of the state agency psychologists, finding that their opinions did not account for all of Plaintiff's mental restrictions and that Plaintiff was more limited than the state agency psychologists found. (Dkt. 8-2 at 30, R. 29). No other opinion exists in the record regarding Plaintiff's functional limitations for her mental disorders. As it stands, it is not at all clear how the ALJ concluded that limiting Sabrina to "simple, routine, and rote tasks that require little independent judgment or decision-making" and a "stable work setting" was

sufficient to address the claimant's limitations in concentration, persistence, or pace.

The Commissioner maintains that the Seventh Circuit has affirmed almost every decision where the ALJ included "evidence-based limitations" to address a moderate rating for concentration, persistence, and pace. (Dkt. 11 at 11-12). The Court agrees; however, the ALJ's decision here is devoid of any explanation regarding why he believes a restriction to simple, routine, and rote work in a stable environment sufficiently addresses Sabrina's moderate concentration, persistence, or pace limitations. *See Dawn F. v. Saul*, No. 1:20-cv-01374-RLY-DLP, 2021 WL 4445002, at *17 (S.D. Ind. Sept. 8, 2021), report and recommendation adopted, 2021 WL 4441529 (S.D. Ind. Sept. 28, 2021) ("The Seventh Circuit has established that when an ALJ determines that a claimant has moderate limitations in concentration, persistence, or pace, and then assigns work that is simple and routine, the ALJ's decision must contain some rationale to explain how the simple work restriction accommodates the claimant's particular limitations." (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Martin v. Saul*, 950 F. 3d 369, 374 (7th Cir. 2020))). Without this analysis by the ALJ, the Court is left to guess what specific records the ALJ relied on in crafting Sabrina's mental RFC and unable to determine if the mental functional limitations adequately address the claimant's moderate impairments.

Because the ALJ failed to build a logical bridge between the record evidence and his conclusion regarding the mental RFC, the Court is unable to engage in

meaningful review. Accordingly, this matter must be remanded for further consideration.

## V.    CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/30/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.